```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAVID RAW,
```

       Plaintiff,       **MEMORANDUM & ORDER**
                      Civil Action No. 09-4341
  -against-              (DRH) (ARL)

BANK OF NEW YORK MELLON CORPORATION
and PERSHING, LLC,

       Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Law Offices of CalvaccaMoran**
Attorneys for Plaintiff
P.O. Box 1334
66 Frazar Road
West Falmouth, Massachusetts 02574
By: Steven Calvacca, Esq.


**Davis & Gilbert LLP**
Attorneys for Defendants
1740 Broadway
New York, New York 10019
By: Howard J. Rubin, Esq.
   Daniel A. Feinstein, Esq.
   Jessica Golden Cortes, Esq.


**HURLEY, Senior District Judge:**

   Plaintiff David Raw ("Plaintiff") filed this action against his former employer Pershing, LLC ("Pershing"), a subsidiary of defendant Bank of New York Mellon Corporation ("Defendant-Bank") (collectively "Defendants") for retaliation and wrongful discharge under the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 *et seq*. Presently before the Court is Defendants'

motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration and dismiss Plaintiff's complaint, or in the alternative to compel arbitration and stay this lawsuit pursuant to Section 3 of the FAA. For the reasons stated below, Defendants' motion is granted and Plaintiff's complaint is dismissed.

**Factual and Procedural Background**

From May 2007 to January 2009, Plaintiff was employed by Pershing as a Vice President of Operational Risk and Control.[1] Plaintiff signed a written Employee Agreement[2] with Pershing on May 8, 2007, which contained, inter alia, a mandatory arbitration provision which is the subject of this dispute. It provides in relevant part:

> ANY DISPUTES ARISING BETWEEN THE EMPLOYEE AND THE EMPLOYER INCLUDING THOSE CONCERNING COMPENSATION, BENEFITS, OR OTHER TERMS OR CONDITIONS OF EMPLOYMENT (INCLUDING ALLEGED DISCRIMINATION OR HARASSMENT) WILL BE DETERMINED BY ARBITRATION . . .

(Ex. A to Defs.' Aff., Dkt. No. 9 ¶ 5) (capital letters in original).) The Employee Agreement contained another paragraph immediately following Paragraph 5, also at issue, which provides that:

> EXCEPT OF DISHONEST OR FRAUDULENT ACTS COMMITTED BY THE EMPLOYEE, NEITHER EMPLOYER NOR EMPLOYEE WILL COMMENCE ANY ACTION, SUIT, OR PROCEEDING AGAINST THE OTHER ARISING FROM, RELATED TO OR OTHERWISE CONNECTED WITH ACTS WHICH WERE TAKEN OR WHICH ALLEGEDLY SHOULD HAVE BEEN TAKEN DURING THE EMPLOYEES [sic] EMPLOYMENT BY OR WITH THE EMPLOYER (INCLUDING, BUT NOT LIMITED TO, THOSE CONCERNING COMPENSATION, BENEFITS,

---

[1] Pershing is a member of the New York Stock Exchange which provides broker-dealer services for Defendant-Bank and its customer base.

[2] It should be noted that Plaintiff does not dispute the fact that he knowingly signed and dated the Employee Agreement. (*See* Pl.'s Aff., Dkt. No. 11 at 1.)

TERMS OR CONDITIONS OF EMPLOYMENT, OR ALLEGED DISCRIMINATION OR HARASSMENT OR THE TERMINATION OF SUCH EMPLOYMENT) MORE THAN ONE YEAR AFTER THE OCCURRENCE OF THE ACT OR FAILURE TO ACT GIVING RISE TO THE CLAIM AND IN NO EVENT MORE THAN SIX MONTHS AFTER TERMINATION OF THE EMPLOYEE'S EMPLOYMENT WITH THE EMPLOYER.

(*Id*. ¶ 6.) (capital letters in original).

Plaintiff alleges that a series of events took place beginning in 2008 during which he became aware of a potential glitch or security breach in Pershing's internet application, NETX-Pro.[3] In short, the NETX-Pro application could be accessed remotely by Pershing employees, which may have allowed for the dissemination to third parties of clients' personal information such as social security numbers and bank records, among others. Plaintiff then began to investigate the potential breach and conducted empirical studies to assess its severity. (Compl., Dkt. No. 1 at 4-8.) In late August 2008, Plaintiff first informed his direct supervisor, Jane Longendyck ("Longendyck") of the potential breach. (*Id.* at 7.) Longendyck refused to discuss the matter with Plaintiff and ordered Plaintiff out of her office. (*Id.*)

In early October 2008, Longendyck submitted a "written action plan" to Plaintiff which targeted certain performance goals, which Plaintiff believed were already part of his regular work assignments and was otherwise unwarranted. (*Id*. at 8-9.) Plaintiff then began searching for another position within Pershing. (*Id*. at 9.) On November 17, 2008, Plaintiff was advised by Pershing's human resource department that he could no longer apply for positions within Pershing because Plaintiff was on "written warning" status. (*Id*.) Plaintiff was unaware that the

---

[3] NETX-Pro "permits access to non-public, private information, such as social security numbers, taxpayer identification numbers, bank account numbers, account balances, documents with digitized signatures and net worth" for both Pershing and Defendant-Bank customers. (Compl., Dkt. No. 1 at 4.)

3

written action plan from Longendyck constituted "written warning" status and filed an employee complaint pursuant to Defendant-Bank's internal policies. The following day, Plaintiff was given a verbal warning for allegedly acting belligerently the previous day upon being informed that he could no longer apply for positions within Pershing, and was informed that he was belligerent on "other unidentified and undocumented occasions." (*Id.* at 10.) From approximately August 2008 to November 2008, Plaintiff attempted on several occasions to inform his superiors of the potential breach. (*Id*. at 7-11.)

On November 21, 2008, Plaintiff was placed on administrative leave, absent any accompanying explanation, until December 4, 2008. (*Id*. at 11.) On January 30, 2009, Plaintiff was informed by Pershing that he was terminated for violations of company policy, which violations were not immediately disclosed to Plaintiff. (*Id*. at 13-14.)

On February 10, 2009, Plaintiff filed an administrative complaint[4] against Defendants alleging unlawful retaliation.[5] Defendants timely answered the administrative complaint on March 31, 2009. Plaintiff then gave notice 180 days later of his intent to file the present action, and the administrative complaint was dismissed. On October 9, 2009, Plaintiff commenced the current action, and on June 18, 2010, Defendants filed the instant motion.

---

[4] Although Plaintiff's Complaint and opposition papers state that the administrative complaint was filed with the Department of Labor, Defendants' Memorandum of Law in support of their motion states that Plaintiff filed an administrative complaint with the Occupational Health and Safety Administration, not the Department of Labor.

[5] Plaintiff asserts that he is entitled to whistleblower protection pursuant to 18 U.S.C. §1514A for disclosing the potential security breach of NETX-Pro to his superiors while employed by Pershing.

4

## The Parties' Contentions

The Complaint asserts two causes of action based on wrongful discharge and retaliation under SOX and CEPA. Plaintiff contends that his claims are not subject to the arbitration provision found in Paragraph 5 of the Employee Agreement because "the parties agreed to arbitrate only the terms and conditions of employment and not matters of termination and wrongful discharge." (Pl.'s Aff., Dkt. No. 11 at 2.) Plaintiff asserts that the arbitration provision of Paragraph 5 fails to specifically mention termination or wrongful discharge and as a result those claims cannot be encompassed by that paragraph. (*Id*.) Defendants, however, maintain that the current dispute is arbitrable because Plaintiff's claims of wrongful discharge and retaliation under SOX and CEPA are "disputes" within the meaning of Paragraph 5 of the Employee Agreement. For the reasons that follow, the Court find that Plaintiff's claims do fall within the scope of Paragraph 5. Accordingly, Defendants' motion to compel arbitration is granted.

## Discussion

### I. Legal Standard

It is well settled that any doubts about the scope of arbitrable issues should be resolved in favor of arbitration. *Nulife Entm't, Inc. v. Torres*, 698 F. Supp. 2d 409, 413 (S.D.N.Y. 2010); *see also Telenor Mobile Commc'ns AS v. Storm LLC,* 584 F.3d 396, 406 (2d Cir. 2009). There is a "strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Am. Gen. Life Ins. Co. v. Oppenheimer Life Agency*, 2010 WL 1924747, at *2 (S.D.N.Y. May 11, 2010) (*citing Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)).

In determining whether or not a dispute is governed by an arbitration agreement, the Second Circuit has provided courts with a four-pronged analysis:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (citations omitted) (*quoting Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

## II. The Parties Agreed to Arbitrate

As stated above, Paragraph 5 of the Employment Agreement contains a mandatory arbitration clause. Plaintiff does not dispute that he signed the Employee Agreement which contains this clause. Instead, Plaintiff asserts that his claims for retaliation and wrongful discharge do not fall within the ambit of Paragraph 5 because they do not constitute a "dispute" within the meaning of that provision. For the reasons that follow, the Court finds that Plaintiff's claims do fall within Paragraph 5.

### A. Paragraph 5 Contains a Broad Arbitration Clause Which Encompass Plaintiff's Claims

For ease of reference, the Court repeats the relevant portion of Paragraph 5 below:

> ANY DISPUTES ARISING BETWEEN THE EMPLOYEE AND THE EMPLOYER INCLUDING THOSE CONCERNING COMPENSATION, BENEFITS, OR OTHER TERMS OR CONDITIONS OF EMPLOYMENT (INCLUDING ALLEGED DISCRIMINATION OR HARASSMENT) WILL BE DETERMINED BY ARBITRATION . . .

(Ex. A to Defs.' Aff., Dkt. No. 9 ¶ 5) (capital letters in original).)

The pertinent language in the arbitration clause at issue—"any disputes between the

6

employee and the employer"—is similar to one in which the Second Circuit has found to be "the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (the arbitration clause in that case read: "Any claim or controversy arising out of or relating to th[e] agreement"). It comports with one that the Second Circuit found to be "the prototypical broad arbitration provision." *Oldroyd*, 134 F.3d at 76 (finding "[a]ny dispute, controversy or claim arising under or in connection with this Agreement shall be settled exclusively by arbitration" to be a broad arbitration clause). Further, it is in line with similar arbitration clauses which courts have found to be broad.[6]

It is important to note that the arbitration clause is broad, rather than narrow, because it "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the dispute." *Bank Julius Baer & Co.*, 424 F.3d at 284. Further "[w]here the arbitration clause is broad . . . arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). Here, Plaintiff has not overcome the presumption of arbitrability. In fact, even a plain reading of

---

[6] *See JLM Indus.*, Inc., 387 F.3d at 167 (finding the following to be a broad arbitration clause: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration"); *Googla Home Decor LLC v. Uzkiy*, 2009 WL 2922845, at *5 (E.D.N.Y. Sept. 8, 2009) (finding the following to be a broad arbitration clause: "Any dispute, controversy, or claim arising out of or in connection with this Agreement . . . shall, upon the request of any party involved, be submitted to, and settled by, arbitration"); *Orange County Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005) (finding that "[a]ny disputes arising from this [a]greement" was a broad arbitration clause); *Marcus v. Frome*, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003) (finding "any dispute, controversy or claim arising out of or relating to this Agreement" to be a broad arbitration clause).

Paragraph 5 lends to the conclusion that Plaintiff's claims of wrongful discharge and retaliation are encompassed by Paragraph 5's arbitration provision. The term "any disputes between the employee and the employer" is broad enough to encompass Plaintiff's present claims.

Lastly, Plaintiff contends that Paragraph 5's omission of "termination" and/or "wrongful discharge" is of consequence. (Dkt. No. 11 at 2.) Plaintiff points to Paragraph 6 as the only reference to "termination" in both Paragraphs 5 and 6, and states that it is "dealt with in [Paragraph 6 in a] different manner . . . [than Paragraph 5 and] Defendants have failed to take [that] into account." (*Id*. at 3.) While Plaintiff is correct that Paragraphs 5 and 6 have to be construed together,[7] Paragraph 6 does not limit Paragraph 5's arbitration provision. Paragraph 6 merely limits the time in which the employee or employer can properly commence an action against the other.

### B. Congress Did Not Intend SOX Claims to be Non-Arbitrable

There is one federal statutory claim in Plaintiff's complaint made under Section 1514A of SOX. When a federal statutory claim is involved in a motion, "a party can prevent enforcement of the arbitration agreement only by showing that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (internal quotation omitted). Proof of that intent could "be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Id.*

Defendants have correctly pointed out that "[t]here is nothing in the text of the statute or

---

[7] *See Kelso Enterprises Ltd. v. A.P. Moller-Maersk*, 2010 WL 1660040, at *1 (2d Cir. Apr. 27, 2010) ("Generally, when interpreting a contract . . . we strive to give effect to all of the terms . . . [by] reading them together.").

8

the legislative history of the Sarbanes-Oxley act evincing [an] intent to preempt arbitration of claims under the act. Nor is there an inherent conflict between arbitration and the statute's purposes." *Boss v. Salomon Smith Barney Inc.*, 263 F. Supp. 2d 684, 685 (S.D.N.Y. 2003); *see also Guyden*, 544 F.3d at 383 ("[B]oth Houses of Congress, acting separately, rejected versions of SOX that would have prohibited mandatory arbitration of whistleblower claims."). Plaintiff's claims under SOX are arbitrable and can properly be submitted to arbitration under the provisions of Paragraph 5.

      **C.    A Stay of the Proceedings is Unwarranted and Plaintiff's Complaint is Dismissed**

As discussed above, Plaintiff's sole federal claim is arbitrable and should be submitted to arbitration. Under the FAA a district court "shall on application of one of the parties stay the trial of the action [when the claims are] referable to arbitration." 9 U.S.C. § 3. " However [a]ll courts of which we are aware have followed the rule that, [w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 506 (S.D.N.Y. 2009) (internal quotations omitted) (collecting cases).

**III.    Plaintiffs's Choice of Law Analysis is Unwarranted**

The Employee Agreement contains a choice of law provision which states that "[t]his agreement will be governed by and construed under and in accordance with the laws of the State of New York." (Ex. A to Defs.' Aff., Dkt. No. 9 ¶ 7.) Plaintiff in his opposition papers asserts that under a New York conflict of law analysis, New Jersey law governs this Court's analysis of the arbitration provision found in the Employee Agreement. (Dkt. No. 11 at 6.) This analysis is

flawed because the Court's interpretation of the scope of an arbitration clause is governed by federal law. *See John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58 (2d Cir. 2001) ("[w]hether a party is bound by an arbitration clause is governed by federal law") (*citing Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993)).

**Conclusion**

For all of the above reasons, Defendants' motion to compel arbitration and dismiss Plaintiff's complaint is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
October 21, 2010

/s/
Denis R. Hurley
Senior District Judge